**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. __09 - 21018__ CR-JORDAN

/McALILEY.

18 U.S.C. § 1349
42 U.S.C. § 1320a-7b(b)(1)
42 U.S.C. § 1320a-7b(a)(2)
18 U.S.C. § 2
18 U.S.C. § 982

**UNITED STATES OF AMERICA**

vs.

**FRED DWECK, M.D.,**
**ARTURO FONSECA,**
    **a/k/a "Tury Fonseca,"**
**YUDEL CAYRO,**
**ISIS TORRES, R.N.,**
**FRANCISCO PORTILLO, R.N.,**
**ARMANDO SANCHEZ, R.N.,**
**LISSBET DIAZ,**
**MARLENYS FERNANDEZ,**
    **a/k/a "Marlenys Rodriguez,"**
**SHEILLAH ROTTA, R.N.,**
**ALAIN FERNANDEZ,**
**EDUARDO ROMERO,**
**ANTONIO OCHOA,**
**TERESITA LEAL, R.N.,**
**SILVIO RUIZ, R.N.,**
**and WILLIAM MADRIGAL,**

            **Defendants.**
_____/



FILED by _____ D.C.

DEC 1 0 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment:

## The Medicare Program

1.      The Medicare Program ("Medicare") was a federal healthcare program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Individuals who received benefits under Medicare where referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), to beneficiaries who required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services under Medicare Part A were typically made directly to an HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiary.

4.      Physicians, clinics and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that had been performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who ordered the services.

5.     CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs.  CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States.  In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto") to administer Part A HHA claims.   As administrator, Palmetto was to receive, adjudicate and pay, claims submitted by HHA providers under the Part A program for home health claims.  Additionally, CMS separately contracted with companies in order to review HHA providers' claims data.  CMS first contracted with TriCenturion, a Program Safeguard Contractor.   Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor.  Both TriCenturion and SafeGuard Services reviewed HHA provider's claims for potential fraud, waste and abuse.

### Part A Coverage and Regulations

### Reimbursements

6.     The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits.  A patient qualified for home health benefits only if the patient:

    a.     was confined to the home, also referred to as homebound;

    b.     was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

    c.     the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy, the beneficiary was confined to the home, that a POC for furnishing services was established and periodically reviewed, and that the services were furnished while the beneficiary was under the care of the

physician who established the POC.

7.      HHAs were reimbursed under the Home Health Prospective Payment System ("PPS"). Under PPS, Medicare paid Medicare-certified HHAs a predetermined base payment for each 60 days that care was needed. This 60-day period was called an "episode of care." The base payment was adjusted based on the health condition and care needs of the beneficiary. This adjustment was done through the Outcome and Assessment Information Set ("OASIS"), which was a patient assessment tool for measuring and detailing the patient's condition. If a beneficiary was still eligible for care after the end of the first episode of care, a second episode could commence. There were no limits to the number of episodes of home health benefits a beneficiary could receive as long as the beneficiary remained eligible.

8.      In order to be reimbursed, the HHA would submit a Request for Anticipated Payment ("RAP") and subsequently received a portion of their reimbursement payment in advance. At the end of a 60 day episode, when the final claim was submitted, the remaining portion of the payment would be reimbursed. As explained in more detail below, "Outlier Payments" are additional PPS reimbursements based on visits in excess of the norm. Palmetto paid Outlier Payments to HHA providers under PPS where the providers' RAP submission established that the cost of care exceeded the established Health Insurance Prospective Payment System ("HIPPS") code threshold dollar amount.

<u>**Record Keeping Requirements**</u>

9.      Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the home health agency.

-4-

These medical records were required to be sufficient to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the home health agency under the Part A program.

10.    Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare was a POC that included the physician order for home healthcare, diagnoses, types of services/frequency of visits, prognosis/rehabilitation potential, functional limitations/activities permitted, medications/ treatments/ nutritional requirements, safety measures/discharge plans, goals, and physician signature. Also required was a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services, and an OASIS.

11.    Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health nurse, therapist and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

## Special Outlier Provision

12.    While payment for each episode of care was adjusted to reflect the beneficiary's health condition and needs, an "outlier" provision existed to ensure appropriate payment for those beneficiaries that have the most extensive care needs, which may result in an Outlier Payment to the

HHA. Outlier Payments are additions or adjustments to the payment amount based on an increased type or amount of medically necessary care. Adjusting payments through Outlier Payments to reflect the HHA's cost in caring for each beneficiary including the sickest beneficiaries, would ensure that all beneficiaries had access to home health services for which they are eligible.

13.     Medicare regulations allowed certified home health agencies to subcontract home health care services to nursing companies, registries, or groups (nursing groups), which would, in turn, bill the certified home health agency. That certified agency would bill Medicare for all services to the patient. The HHA's professional supervision over arranged-for services required the same quality controls and supervision of its own employees.

14.     For insulin-dependant diabetic beneficiaries, Medicare paid for insulin injections by an HHA agency when a beneficiary was determined to be unable to inject their own insulin and the beneficiary had no available care-giver able or willing to inject the beneficiary.   Additionally, for beneficiaries for whom occupational or physical therapy were medically necessary, Medicare paid for such therapy provided by an HHA. The basic requirement that a physician certify that a beneficiary be confined to the home or homebound, as certified by a physician was a continuing requirement for a Medicare beneficiary to receive such home health benefits.

### Courtesy Medical Group, Inc.

15.     Courtesy Medical Group, Inc. ("Courtesy") was a Florida corporation incorporated on or about April 7, 2004, that did business in Miami-Dade County, Florida, as a medical clinic. Courtesy was initially located at 1175 NE 125th Street, Suite 211, North Miami, Florida. On or about June 9, 2009, Courtesy purportedly moved its medical clinic to 8080 W. Flagler Street, Suite 3D, Miami, Florida. From on or about March 7, 2007, through on or about June 29, 2009, approximately 344 beneficiaries were referred for home health services through Courtesy.

## The Defendants

16.     Defendant **FRED DWECK, M.D.** was a resident of Broward County, Florida, a licensed physician in the State of Florida, and worked as a physician at Courtesy. From on or about August 1, 2006, through on or about August 31, 2009, **DWECK** referred and signed prescriptions, medical certifications and POCs for approximately 1,279 beneficiaries for home health services, resulting in approximately $40,888,474 being billed to Medicare for purported home health care services, of which approximately $23,779,398 was paid. Of that total, approximately 344 beneficiaries were referred for home health services by **DWECK** while he worked at Courtesy, resulting in approximately $16,605,878 being billed to Medicare and approximately $9,806,712 was paid.

17.     Defendant **ARTURO FONSECA** was a resident of Miami-Dade County, Florida, and a registered owner of Courtesy.

18.     Defendant **YUDEL CAYRO** was a resident of Miami-Dade County, Florida, and an owner of Courtesy.

19.     Defendant **ISIS TORRES, R.N.** was a resident of Miami-Dade County, Florida, and a licensed registered nurse ("R.N.") who purportedly provided home health services to beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

20.     Defendant **FRANCISCO PORTILLO, R.N.** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

21.     Defendant **ARMANDO SANCHEZ, R.N.** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

22.     Defendant **LISSBET DIAZ** was a resident of Miami-Dade County, Florida, and a

certified nurse assistant who purportedly provided home health services to Medicare beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

23.     Defendant **MARLENYS FERNANDEZ**, was a resident of Miami-Dade County, Florida, and a certified nurse assistant who purportedly provided home health services to Medicare beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

24.     Defendant **SHEILLAH ROTTA, R.N.** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

25.     Defendant **ALAIN FERNANDEZ** was a resident of Miami-Dade County, Florida, and a licensed practical nurse who purportedly provided home health services to Medicare beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

26.     Defendant **EDUARDO ROMERO** was a resident of Miami-Dade County, Florida, and recruited Medicare beneficiaries to be referred for home health services through Courtesy.

27.     Defendant **ANTONIO OCHOA** was a resident of Miami-Dade County, Florida, and recruited Medicare beneficiaries to be referred for home health services through Courtesy.

28.     Defendant **TERESITA LEAL, R.N.** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

29.     Defendant **SILVIO RUIZ, R.N.** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through Courtesy ordered by defendant **FRED DWECK, M.D.**

30.     Defendant **WILLIAM MADRIGAL** was a resident of Miami-Dade County, Florida,

-8-

and a Medicare beneficiary who purportedly received home health services referred through Courtesy

ordered by defendant **FRED DWECK, M.D.**

**COUNT 1**
**Conspiracy to Commit Health Care Fraud**
**(18 U.S.C. § 1349)**

1.    Paragraphs 1 through 30 of the General Allegations section of this Indictment are

realleged and incorporated by reference as though fully set forth herein.

2.    From in or around August 2006, the exact date being unknown to the Grand Jury, and

continuing through the date of this Indictment, at Miami-Dade County, in the Southern District of

Florida, and elsewhere, the defendants,

**FRED DWECK, M.D.,**
**ARTURO FONSECA,**
**a/k/a "Tury Fonseca,"**
**YUDEL CAYRO,**
**ISIS TORRES, R.N.,**
**FRANCISCO PORTILLO, R.N.,**
**ARMANDO SANCHEZ, R.N.,**
**LISSBET DIAZ,**
**MARLENYS FERNANDEZ,**
**a/k/a "Marlenys Rodriguez,"**
**SHEILLAH ROTTA, R.N.,**
**ALAIN FERNANDEZ,**
**EDUARDO ROMERO,**
**ANTONIO OCHOA,**
**TERESITA LEAL, R.N.,**
**SILVIO RUIZ, R.N.,**
**and**
**WILLIAM MADRIGAL,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others,

known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is,

to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as

defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of

materially false and fraudulent pretenses, representations, and promises, money and property owned

-9-

by, and under the custody and control of, said health care benefit program, in connection with the

delivery of and payment for health care benefits, items, and services.

**Purpose of the Conspiracy**

3.      It was a purpose of the conspiracy for the defendants to unlawfully enrich themselves

by, among other things, (a) accepting and receiving kickbacks and bribes in exchange for providing

false and fraudulent prescriptions, medical certifications and POCs, and for arranging for the use of

Medicare beneficiary numbers as the bases of claims filed for home health care; (b) causing the

submission and concealment of false and fraudulent claims to Medicare, the receipt and transfer of the

proceeds from the fraud, and the payment of kickbacks; and (c) causing the diversion of the proceeds

of the fraud for the personal use and benefit of the defendants and their co-conspirators.

**Manner and Means of the Conspiracy**

The manner and means by which the defendants and other co-conspirators sought to

accomplish the object and purpose of the conspiracy included, among other things:

4.      **EDUARDO ROMERO, ANTONIO OCHOA,** and other co-conspirators, known and

unknown, would recruit and pay kickbacks and bribes to Medicare beneficiaries so that they could be

placed at Miami-area HHAs that would bill Medicare for therapy and home health services.

5.      **WILLIAM MADRIGAL**, and other co-conspirators, would accept kickbacks and

bribes in return for allowing Medicare to be billed for home health services purportedly provided to

them that were not medically necessary.

6.      Co-conspirators would send patient recruiters and Medicare beneficiaries to **ARTURO**

**FONSECA, YUDEL CAYRO,** and **FRED DWECK, M.D.,** to obtain prescriptions for therapy and

home health services that were not medically necessary.

7.      **ARTURO FONSECA** and **YUDEL CAYRO** would own and operate Courtesy, a

-10-

purported medical clinic and Florida corporation located in Miami-Dade County.

8.      **ARTURO FONSECA** and **YUDEL CAYRO** would obtain a Medicare provider number for Courtesy, and would use it to bill Medicare for routine medical examinations for beneficiaries that were recruited and paid kickbacks in exchange for allowing HHAs to submit claims to Medicare for unnecessary home health and therapy services.

9.      **FRED DWECK, M.D.** would work as a medical doctor at Courtesy, among other clinics, where he would refer Medicare beneficiaries to home health agencies for home health care and therapy services that were not medically necessary.

10.     Co-conspirators would offer and pay kickbacks and bribes to **ARTURO FONSECA** and **YUDEL CAYRO** to obtain prescriptions for therapy and home health services that were not medically necessary.

11.     **ARTURO FONSECA** and **YUDEL CAYRO** would solicit and accept kickbacks and bribes in return for prescriptions for home health and therapy services, medical certifications and POCs for beneficiaries signed by **FRED DWECK, M.D.**

12.     **ISIS TORRES, R.N., FRANCISCO PORTILLO, R.N., ARMANDO SANCHEZ, R.N., LISSBET DIAZ, MARLENYS FERNANDEZ, SHEILLAH ROTTA, R.N., ALAIN FERNANDEZ, TERESITA LEAL, R.N.,** and **SILVIO RUIZ, R.N.,** would falsify patient files to make it appear that Medicare beneficiaries qualified for and received services that were not medically necessary and/or not provided.

13.     Co-conspirators at Miami-area HHAs would submit or cause the submission of false and fraudulent bills to the Medicare program for therapy and home health services that were not medically necessary.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-14
### Kickbacks
### (42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 2)

1.     Paragraphs 1 through 30 of the General Allegations section of this Indictment are

realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates enumerated below, at Miami-Dade County, in the Southern

District of Florida, and elsewhere, the defendants as set forth below, did knowingly and willfully

solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, in the form of

cash and/or checks, in return for referring an individual to a person for the furnishing and arranging

for the furnishing of items and services for which payment may be made in whole and in part under

a Federal health care program, that is, Medicare, and in return for the purchasing, leasing, and ordering

of goods, items, and services for which payment may be made in whole and in part under a Federal

health care program, that is, Medicare:

| Count | Defendant | On or About Date | Approximate Amount of Kickback Received |
|-------|-----------|------------------|------------------------------------------|
| 2 | ARTURO FONSECA | July 13, 2006 | $10,000 |
| 3 | ARTURO FONSECA | October 3, 2006 | $1,200 |
| 4 | ARTURO FONSECA | October 3, 2006 | $4,000 |
| 5 | ARTURO FONSECA | October 23, 2006 | $600 |
| 6 | ARTURO FONSECA | January 22, 2007 | $289 |
| 7 | EDUARDO ROMERO | May 18, 2007 | $3,250 |
| 8 | ANTONIO OCHOA | July 19, 2007 | $4,160 |
| 9 | EDUARDO ROMERO | March 3, 2009 | $2,970 |
| 10 | EDUARDO ROMERO | March 3, 2009 | $2,970 |
| 11 | EDUARDO ROMERO | March 31, 2009 | $2,970 |
| 12 | ANTONIO OCHOA | March 31, 2009 | $2,970 |
| 13 | ANTONIO OCHOA | April 30, 2009 | $2,970 |
| 14 | WILLIAM MADRIGAL | January 2009 | $1,000 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1) and Title 18, United States

Code, Section 2.

**COUNTS 15-24**
**False Statements for Use in**
**Determining Rights for Benefit and Payment by Medicare**
**(42 U.S.C. § 1320a-7b(a)(2) and 18 U.S.C. § 2)**

1.      Paragraphs 1 through 30 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants as set forth below, did knowingly and willfully make and cause to be made false statements and representations of material facts, as set forth below, in patient files for the beneficiaries set forth below, for use in determining rights for any benefit and payment under a Federal health care program, that is, Medicare:

| Count | Defendant | Approximate Dates | Medicare Beneficiary | False Statement and Representation |
|---|---|---|---|---|
| 15 | **MARLENYS FERNANDEZ** | 04/11/08-06/07/08 | I.P. | Describing symptoms that were not-existent |
| 16 | **ARMANDO SANCHEZ, R.N.** | 06/22/08-07/05/08 | R.A. | Describing symptoms that were not-existent |
| 17 | **TERESITA LEAL, R.N.** | 07/13/08-07/26/08 | I.P. | Describing symptoms that were not-existent |
| 18 | **FRED DWECK, M.D.** | 07/24/08-02/12/09 | W.M. | Beneficiary qualifying for home health services that were unnecessary |
| 19 | **FRANCISCO PORTILO, R.N.** | 07/29/08 | M.G.H. | Describing symptoms that were not-existent, and services that were not rendered |
| 20 | **ALAIN FERNANDEZ** | 08/10/08-09/13/08 | M.L. | Describing symptoms that were not-existent |
| 21 | **SHEILLAH ROTTA, R.N.** | 08/19/08-10/10/08 | R.A. | Describing symptoms that were not-existent |
| 22 | **ISIS TORRES, R.N.** | 09/09/08-10/16/08 | J.T. | Describing symptoms that were not-existent |

-13-

| Count | Defendant | Approximate Dates | Medicare Beneficiary | False Statement and Representation |
|-------|-----------|-------------------|---------------------|-----------------------------------|
| 23 | SILVIO RUIZ, R.N. | 10/01/08 | E.M. | Describing symptoms that were not-existent, and services that were not rendered |
| 24 | LISSBET DIAZ | 02/01/09-03/25/09 | M.L. | Describing symptoms that were not-existent |

In violation of Title 42, United States Code, Section 1320a-7b(a)(2) and Title 18, United States Code, Section 2.

## FORFEITURE
### (18 U.S.C. § 982)

1.      The allegations contained in Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **FRED DWECK, M.D., ARTURO FONSECA, YUDEL CAYRO, ISIS TORRES, R.N., FRANCISCO PORTILLO, R.N., ARMANDO SANCHEZ, R.N., LISSBET DIAZ, MARLENYS FERNANDEZ, SHEILLAH ROTTA, R.N., ALAIN FERNANDEZ, EDUARDO ROMERO, ANTONIO OCHOA, TERESITA LEAL, R.N., SILVIO RUIZ, R.N.,** and **WILLIAM MADRIGAL,** have an interest pursuant to Title 18, United States Code, Section 982.

2.      Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of **FRED DWECK, M.D., ARTURO FONSECA, YUDEL CAYRO, ISIS TORRES, R.N., FRANCISCO PORTILLO, R.N., ARMANDO SANCHEZ, R.N., LISSBET DIAZ, MARLENYS FERNANDEZ, SHEILLAH ROTTA, R.N., ALAIN FERNANDEZ, EDUARDO ROMERO, ANTONIO OCHOA, TERESITA LEAL, R.N., SILVIO RUIZ, R.N.,** and **WILLIAM MADRIGAL,** for the health care fraud offense charged in Count 1 of this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly

-14-

or indirectly, from gross proceeds traceable to the commission of the offense.

       3.     If any of the property described above, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(I).

All pursuant to Title 18, United States Code, Section (a)(7).

                         A TRUE BILL,

                         _____

                         FOREPERSON

_____

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

_____

KIRK OGROSKY, DEPUTY CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

_____

N. NATHAN DIMOCK, TRIAL ATTORNEY
MICHAEL PADULA, TRIAL ATTORNEY
MARTHA TALLEY, TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. |
|---|---|
| vs. | |
| FRED DWECK, M.D., et al., | **CERTIFICATE OF TRIAL ATTORNEY***|
| **Defendants.** / | **Superseding Case Information:** |

**Court Division**: (Select One)

| | | New Defendant(s) | Yes _____ No _____ |
|---|---|---|---|
| _X_ Miami ____ Key West | | Number of New Defendants | |
| ____ FTL ____ WPB ____ FTP | | Total number of counts | _____ |

I do hereby certify that:

1.     I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.     I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.     Interpreter:   (Yes or No)    _Yes_
      List language and/or dialect       _Spanish_

4.     This case will take    _11 to 20_   days for the parties to try.

5.     Please check appropriate category and type of offense listed below:

| (Check only one) | | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | | Petty | _____ |
| II | 6 to 10 days | _____ | | Minor | |
| III | 11 to 20 days | _X_ | | Misdem. | _____ |
| IV | 21 to 60 days | _____ | | Felony | _X_ |
| V | 61 days and over | _____ | | | |

6.     Has this case been previously filed in this District Court? (Yes or No)    _No_
If yes:
Judge: _____    Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?    (Yes or No)    _No_
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No)    _No_

7.     Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   _X_ No

8.     Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   _____ Yes   _X_ No

_____
N. Nathan Dimock
Trial Attorney, DOJ
Court No. A5501195

*Penalty Sheet(s) attached

REV 4/8/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**:   FRED DWECK, M.D.

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:   10  years' imprisonment

Count #: 18

False Statement for Use in Application For Payments by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\*Max. Penalty**:   5 years' imprisonment

Count #:

**\*Max. Penalty**:

Count #:

**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:    ARTURO FONSECA, a/k/a "Tury Fonseca"

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:    10  years' imprisonment

Counts #: 2-6

Kickbacks

42 U.S.C. § 1320a-7b(b)(1)

**\*Max. Penalty**:    5 years' imprisonment as to each count

Counts #:

_____

_____

**\*Max. Penalty**:

Count #:

_____

_____

**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   YUDEL CAYRO

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:   10  years' imprisonment

Counts #:

**\*Max. Penalty:**

Counts #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**:   ISIS TORRES, R.N.

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:   10  years' imprisonment

Count #: 22

False Statement for Use in Application For Payments by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\*Max. Penalty**:   5 years' imprisonment

Count #:

**\*Max. Penalty**:

Count #:

**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:     FRANCISCO PORTILLO, R.N.

**Case No**:

Count  #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

__* Max.Penalty__:     10  years' imprisonment

Count  #: 19

False Statement for Use in Application For Payments by Medicare

42 U.S.C. § 1320a-7b(a)(2)

__*Max. Penalty__:     5 years' imprisonment

Count  #:

__*Max. Penalty__:

Count  #:

__*Max. Penalty__:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:   ARMANDO SANCHEZ, R.N.

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:   10  years' imprisonment

Count #: 16

False Statement for Use in Application For Payments by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\*Max. Penalty**:   5 years' imprisonment

Count #:

**\*Max. Penalty**:

Count #:

**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: ___ LISSBET DIAZ _____

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**: 10 years' imprisonment

Count #: 24

False Statement for Use in Application For Payments by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\*Max. Penalty:** 5 years' imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**:   MARLENYS FERNANDEZ, a/k/a "Marlenys Rodriguez"

**Case No**: _____

Count  #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:   10  years' imprisonment

Count  #: 15

False Statement for Use in Application For Payments by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\*Max. Penalty:**   5 years' imprisonment

Count  #:

_____

_____

**\*Max. Penalty:**

Count  #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: ___SHEILLAH ROTTA, R.N._____

**Case No**: _____

Count #: 1

_____Conspiracy to Commit Health Care Fraud_____

_____18 U.S.C. § 1349_____

**\* Max.Penalty**: ___10 years' imprisonment_____

Count #: 21

_____False Statement for Use in Application For Payments by Medicare___

_____42 U.S.C. § 1320a-7b(a)(2)_____

**\*Max. Penalty**: ___5 years' imprisonment_____

Count #:

_____

_____

**\*Max. Penalty**: _____

Count #:

_____

_____

**\*Max. Penalty**: _____


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** ___ALAIN FERNANDEZ_____

**Case No:** _____

Count #: 1

_____Conspiracy to Commit Health Care Fraud_____

_____18 U.S.C. § 1349_____

**\* Max.Penalty:** 10 years' imprisonment_____

Count #: 20

_____False Statement for Use in Application For Payments by Medicare_____

_____42 U.S.C. § 1320a-7b(a)(2)_____

**\*Max. Penalty:** 5 years' imprisonment_____

Count #:

_____

_____

**\*Max. Penalty:** _____

Count #:

_____

_____

**\*Max. Penalty:** _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: ___ EDUARDO ROMERO _____

**Case No**: _____

Count #: 1

_____ Conspiracy to Commit Health Care Fraud _____

_____ 18 U.S.C. § 1349 _____

**\* Max.Penalty**: 10 years' imprisonment _____

Counts #: 7, 9–11

_____ Kickbacks _____

_____ 42 U.S.C. § 1320a-7b(b)(1) _____

**\*Max. Penalty**: 5 years' imprisonment as to each count _____

Count #:

_____

_____

**\*Max. Penalty**: _____

Count #:

_____

_____

**\*Max. Penalty**: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: ___ANTONIO OCHOA_____

**Case No**: _____

Count #: 1

_____Conspiracy to Commit Health Care Fraud_____

_____18 U.S.C. § 1349_____

**\* Max.Penalty**:   10  years' imprisonment_____

Counts #: 8, 12-13

_____Kickbacks_____

_____42 U.S.C. § 1320a-7b(b)(1)_____

**\*Max. Penalty**:   5 years' imprisonment as to each count_____

Count #:

_____

_____

**\*Max. Penalty**:

Count #:

_____

_____

**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:    TERESITA LEAL, R.N.

**Case No**: _____

Count  #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

__* Max.Penalty__:    10  years' imprisonment

Count  #: 17

False Statement for Use in Application For Payments by Medicare

42 U.S.C. § 1320a-7b(a)(2)

__*Max. Penalty__:    5 years' imprisonment

Count  #:

__*Max. Penalty:__

Count  #:

__*Max. Penalty:__

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**:   SILVIO RUIZ, R.N.

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:   10  years' imprisonment

Count #: 23

False Statement for Use in Application For Payments by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\*Max. Penalty:**   5 years' imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**   WILLIAM MADRIGAL

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:   10  years' imprisonment

Count #: 14

Kickbacks

42 U.S.C. § 1320a-7b(b)(1)

**\*Max. Penalty:**   5 years' imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**